IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA          §
                                  §    CIVIL ACTION NO. H-07-3295
v.                                §    CRIMINAL NUMBER H-03-217-01
                                  §
JAMIE OLIS                        §

### MEMORANDUM OPINION AND ORDER

Pending before the court are the following four instruments filed on behalf of defendant, Jamie Olis, seeking the court's recusal:  Letter requesting recusal (Docket Entry No. 347),[1] Motion to Recuse (Docket Entry No. 350), Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 & 455(a) and (b)(1) (Docket Entry No. 352), and Supplemental Motion to Recuse (Docket Entry No. 355). After careful consideration of these instruments and the government's responses thereto, the court concludes that all the pending requests and motions to recuse should be denied.

### I.  Background

On October 5, 2007, Olis filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 305 in Crim. No. H-03-217), and a Motion for Release on Bail (Docket Entry No. 307).  In his motion to vacate Olis asserts the following claims:  (1) the government violated his Fifth and Sixth Amendment rights to present the

---

[1]All docket references will be to Olis' criminal case.

defense of his choice by coercing Dynegy to stop funding his defense; (2) the government violated his Fifth Amendment rights by constructively amending the indictment; and (3) he did not receive constitutionally adequate assistance of counsel.[2]  On November 28, 2007, Olis filed a Motion for Discovery (Docket Entry No. 327), and on December 12, 2007, Olis filed a Motion for Leave to File *Amici Curiae* Brief (Docket Entry No. 332).  On March 3, 2008, the court issued a Memorandum Opinion and Order (Docket Entry No. 344) denying Olis' motion for release on bail, motion for discovery, and motion to file amici curiae brief.  The legal standards that the court applied in ruling on these motions and the reasons why they were denied are stated in the court's March 3, 2008, Memorandum Opinion and Order (Docket Entry No. 344).

On April 30, 2008, attorney Lloyd Kelley delivered to the court a confidential letter written on Olis' behalf asking the undersigned judge (hereinafter "the court") to recuse himself from this case.  Because Kelley failed to file the letter, and because the letter contained no indication that it had been served on the government, the court filed the letter (Docket Entry No. 347) and entered an Order directing the government to respond (Docket Entry No. 348).  Since then, Olis has filed three motions seeking the court's recusal:  the first on May 6, 2008 (Docket Entry No. 350); the second on May 27, 2008 (Docket Entry No. 352); and the third on June 7, 2008 (Docket Entry No. 355).  Because each of Olis' motions

---

[2]Docket Entry No. 305, p. 5.

advance essentially the same grounds for recusal, the court will treat them as a single consolidated motion and instead of addressing each motion individually will address each of Olis' grounds for recusal.

Olis' recusal requests are grounded on two of the claims alleged in his motion to vacate, his claim that the government violated his Fifth and Sixth Amendment rights to present the defense of his choice and his claim that his trial counsel was ineffective.  The substance of Olis' claim that the government violated his Fifth and Sixth Amendment rights to present the defense of his choice is that former United States Attorney for the Southern District of Texas, Michael Shelby, coerced Dynegy to stop funding his defense.  The substance of Olis' recusal request based on this claim is that the court and Shelby were close personal friends, and recusal is warranted under 28 U.S.C. § 144 because this friendship causes the court to be actually biased against Olis, and/or that recusal is warranted under 28 U.S.C. § 455(a) because this friendship might reasonably cause the court's impartiality to be questioned.  One of the reasons Olis argues he lacked effective assistance of counsel at trial is that his attorney failed to object to an ex parte communication the court had with a juror.  Thus, Olis argues that recusal is warranted under 28 U.S.C. § 455(a) because this claim requires the court to rule on the propriety of his own acts and under 28 U.S.C. § 455(b)(1) because the court has personal knowledge of evidentiary

facts pertaining to this claim.  The government argues that Olis'
§ 144 motion should be denied because the declaration that Olis has
submitted in support thereof is insufficient, that Olis' § 455
motions should be denied because no reasonable and objective
person, knowing all of the facts, would harbor doubts concerning
the court's ability to be impartial when ruling on the claims
alleged in Olis' motion to vacate, and that all of Olis' requests
and/or motions to recuse are untimely.

## II.  Olis' Motion Under 28 U.S.C. § 144

Asserting that the court and Shelby were close personal
friends, Olis argues that recusal is warranted under 28 U.S.C.
§ 144 because this friendship causes the court to be actually
biased against him and in favor of upholding his conviction, which
Shelby helped to obtain by coercing Dynegy to stop funding his
defense.  The government argues that Olis' § 144 motion should be
denied because it is untimely and Olis' declaration in support of
it is legally insufficient.[3]  The court agrees.

### A.    Applicable Law

28 U.S.C. § 144 provides that

> [w]henever a party to any proceeding in a district court
> makes and files a timely and sufficient affidavit that
> the judge before whom the matter is pending has a
> personal bias or prejudice either against him or in favor
> of any adverse party, such judge shall proceed no further
> therein, but another judge shall be assigned to hear such

---

[3]United States' Response in Opposition to Motion Pursuant to
28 U.S.C. § 144, Docket Entry No. 354, pp. 5-6.

proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.   It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

"Section 144 relates only to charges of actual bias." Henderson v. Department of Public Safety & Corrections, 901 F.2d 1288, 1296 (5th Cir. 1990) (citing In re Faulkner, 856 F.2d 716, 720 n.6 (5th Cir. 1988)).  "Once the affidavit is filed . . . there are three issues to be determined:  (1) was the affidavit timely filed; (2) was it accompanied by the necessary certificate of counsel of record; and (3) is the affidavit sufficient in statutory terms?"  Parrish v. Board of Commissioners of Alabama State Bar, 524 F.2d 98, 100 (5th Cir. 1975) (en banc), cert. denied, 96 S.Ct. 1685 (1976).

## B.   Analysis

### 1.   Timeliness

Section 144 requires the moving party to file an affidavit "not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."  28 U.S.C. § 144.  Since formal terms of court were abolished long ago, the literal ten-day requirement no longer applies.  Instead, courts simply require

exercise of reasonable diligence in filing an affidavit after discovering facts that show bias, or an explanation of good cause for failing to do so. See Pomeroy v. Merritt Plaza Nursing Home, Inc., 760 F.2d 654, 658 (5th Cir. 1985) (citing Smith v. Danyo, 585 F.2d 83, 86 (3d Cir. 1978) ("timeliness of a § 144 motion turns not solely on the actual time elapsed, but on other factors as well. For example, courts will often consider whether the affiant has participated in substantial pretrial motions between the time he first learned of the asserted bias and the time he filed the § 144 request")). Olis' § 144 motion for recusal is untimely because Olis neither identifies any facts on which it is based that he did not know before he filed his motion to vacate (Docket Entry No. 305) on October 5, 2007, nor offers any explanation that could be construed as good cause for failing to file his § 144 motion before the court expended substantial amounts of time and judicial resources ruling on his ancillary Motions for Release on Bail, Discovery, and Leave to File *Amici Curiae* Brief.

The documentary evidence that Olis submits in support of his § 144 motion shows that the facts stated in his declaration of support were publicly available well before he filed his motion to vacate on October 5, 2007.[4] For example, the "history" tabs of the Wikipedia entries on which Olis relies show that all of the facts

---

[4]See Declaration of Jamie Olis in Support of Motion to Recuse Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352 and exhibits attached thereto.

about the court's and Shelby's common backgrounds was available
before October 5, 2007.  Review of the newspaper articles and blog
entries attached to Olis' declaration similarly shows that they all
predate the filing of his motion to vacate on October 5, 2007.[5]
Since the filing of Olis' motion to vacate, the court has expended
substantial amounts of time and judicial resources considering
Olis' Motions for Release on Bail, Discovery, and Leave to File
*Amici Curiae* Brief, all of which would have been unnecessary if
Olis had a valid basis for recusal under § 144.  Since all the
documentary evidence that Olis has cited in support of the facts
stated in the declaration underlying his § 144 motion was publicly
available <u>before</u> Olis filed either his motion to vacate or his
motions for bail, discovery, or leave to file an <u>amicus</u> brief,  and
since Olis has neither stated nor argued that he discovered any of
the factual information on which he relies <u>after</u> he filed any of
these motions, Olis had a duty to file his § 144 motion for recusal
before the court's judicial resources were spent on resolution of
those motions.  Since Olis neither argues nor explains why his
delay in filing his motions to recuse until after the court ruled
on these motions was reasonable, the court concludes that his § 144
motion for recusal is untimely.

---

[5]The newspaper and blog entry exhibits attached to Olis'
Declaration (Exhibit 6 attached to Docket Entry No. 352) are dated
as follows:  Exhibit 3 - July 19, 2006; Exhibit 4 - March 27, 2007;
Exhibit 5 - June 9, 2005; Exhibit 5a - June 9, 2005; Exhibit 6 -
July 19, 2006; and Exhibit 6a - January 16, 2002.

2.   <u>Legal Sufficiency of Olis' Declaration</u>

Olis' declaration details both the facts from which he infers that the court and Shelby were close personal friends, and the actions and comments that he argues show the court "will be prejudiced in favor of upholding the conviction brought about by his friend Mr. Shelby."[6]   For the reasons stated below the court concludes that Olis' declaration merely states his subjective belief that the court is biased against him but does not state facts that would convince a reasonable person that the court is actually biased.

(a)   Standard of Review

"Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged."   <u>Davis v. Board of School Commissioners of Mobile County</u>, 517 F.2d 1044, 1051 (5th Cir. 1975), <u>cert. denied</u>, 96 S.Ct. 1685 (1976).   <u>See also</u> <u>Berger v. United States</u>, 41 S.Ct. 230, 234 (1921).

> Legal sufficiency is determined as a question of law on the basis [of] whether the affidavit sets out facts and reasons for the party's belief that the judge has a personal bias and prejudice against the party or in favor of the adverse party.   The facts and reasons set out in the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."

<u>Parrish</u>, 524 F.2d at 100 (quoting <u>Berger</u>, 41 S.Ct. at 233).   In

_____

[6]Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 & 455(a) and (b)(1), Docket Entry No. 352, p. 28.

-8-

<u>Parrish</u> the Fifth Circuit adopted the test used by the Third Circuit pursuant to which

> the affiant has the burden of making a three-fold showing:
>
> 1.   The facts must be material and stated with particularity.
>
> 2.   The facts must be such that, if true, they would convince a reasonable man that a bias exists.
>
> 3.   The facts must show the bias is personal, as opposed to judicial, in nature.

<u>Id.</u> (quoting <u>United States v. Thompson</u>, 483 F.2d 527, 528 (3d Cir. 1973). <u>See also</u> <u>United States v. Partin</u>, 312 F.Supp. 1355, 1359 (E.D. La. 1970) ("An affidavit of bias or prejudice, to be sufficient, must identify and carefully delineate time, place, persons, occasions, and circumstances supporting the belief of bias or prejudice."). <u>See also</u> <u>Berger</u>, 41 S.Ct. at 233 (requiring affidavit to include statements of definite time, place, and character of circumstances supporting belief of bias).

(b)   Application of the Law to the Facts

The government argues that the facts stated in Olis' declaration, if true, are not sufficient to support a finding of actual bias sufficient to warrant recusal under § 144 because they are not sufficient to convince a reasonable person (1) that the court had such a close personal friendship with Shelby that would cause the court to be biased against Olis or (2) that the court's acts and comments evidence personal bias against Olis.   <u>See</u>

-9-

<u>Parrish</u>, 524 F.2d at 100 (legally sufficient affidavit must state facts that "if true they would convince a reasonable man that a bias exists" and "[t]he facts must show the bias is personal, as opposed to judicial, in nature").  <u>See also</u> <u>Berger</u>, 41 S.Ct. at 233.

### (1)  Friendship with Shelby as Evidence of Bias

As evidence capable of convincing a reasonable person that the court and Shelby shared a close personal friendship the level of which would cause the court to be biased against him, Olis states the following facts gleaned from newspaper articles, internet sites, and other sources of public information:

a.  Judge Lake and Mr. Shelby have very similar backgrounds in that both attended Texas A&M and the University of Texas law school, both served in the military, both were active members of the Republican party (*see* Exhibits 1 and 2 incorporated into this Affidavit/Declaration and attached hereto — Wikipedia.com, *Sim Lake*, http://en.wikipedia.org/ wiki/Sim-Lake; Wikipedia.com, *Mike Shelby*, http:// en.wikipedia.org/ wiki/Mike-Shelby);

b.  After leaving the U.S. Attorney position, Mr. Shelby joined Fulbright & Jaworski where Judge Lake spent 16 years and was a senior partner (*See* Exhibit 1 & 2, *supra*);

c.  Judge Lake became a judge shortly before Mr. Shelby became an Assistant United States Attorney (*See* Exhibit 1 & 2, *supra*);

d.  Judge Lake knew Mr. Shelby for almost 15 years;

e.  When Mr. Shelby moved to Phoenix in 1997, Judge Lake gave him a gift and told him that he (Judge Lake) knew that he (Mr. Shelby) would be back in Houston someday;

f.  When Mr. Shelby returned to Houston in 2002, Judge

-10-

Lake administered his oath of office for Shelby's new
position as the U.S. Attorney for the Southern District
of Texas during a public ceremony; that swearing-in
appears to have been unnecessary, except as a public
celebration, since Chief U.S. District Judge George Kazen
had already administered the oath of office to Mr. Shelby
in Laredo a month earlier, December 2001;

g.   The same month that Mr. Shelby was sworn in,
Houston-based Enron Corp. crumbled into bankruptcy
proceedings amid scandals of hidden debt, inflated
profits and accounting fraud (see Exhibit 6A, infra);

h.   In June 2005, Mr. Shelby cut his four year term
short and left the U.S. Attorney's Office to work for the
law firm of Fulbright & Jaworski (see Exhibit 2, supra).
Mr. Shelby had announced his resignation from his post as
U.S. Attorney for the Southern District of Texas in May
2005, one week after a visit from the Attorney General
Alberto Gonzales; Mr. Shelby was reported to comment
vaguely that he was not up to stomaching what might come
next and decided to resign (see Exhibits 3 and 4
incorporated into this Affidavit/Declaration and attached
hereto -- Mike Tolson, Harvey Rice, Mike Glenn, Former
U.S. attorney's passion recalled, Houston Chronicle,
July 19, 2006, http://www.chron.com/CDA/archives/
archive.mpl?id= 2006_4155618; Mary Flood, Gonzales
visits, Shelby quits, Gonzales returns, Houston
Chronicle, Mar. 24, 2007, http://blogs.chron.com/
legaltrade/2007/03/ gonzales__visits__shelby__quits__q
1.html);

i.   Of importance is that I have also recently learned
that during the time of Shelby's office's investigation
of Dynegy and the high level executives involved in Alpha
Project, (including Dynegy's former Chairman of the
Board, Chuck Watson) Dynegy paid Fulbright & Jaworski to
represent Chuck Watson.  Mr. Watson and the other top
executives escaped indictment, but Shelby's office
decided to indict only three low level executives,
Gene S. Foster, Helen C. Sharkey, and me;

j.   Subsequently, Mr. Shelby was ravaged by cancer and
committed suicide with a self-inflicted gunshot wound in
July 2006, leaving behind a wife and two daughters (see
Exhibit 3, supra);

k.   In one of his last public appearances, Mr. Shelby,

-11-

visibly ravaged by illness, delivered the keynote address
at the investiture of his successor and right-hand man,
Don DeGabrielle; Mr. Shelby is reported to have been
shrunken by weight loss, his right eye covered by a
bandage, and was supported by his wife as he walked.
(*See* Exhibit 3, *supra*.)

l.    It is reported that Judge Lake attended that
ceremony and would have witnessed his close friend's
deterioration.[7]

Assuming that all of these facts are true, they are not sufficient
to convince a reasonable person that the court and Shelby shared a
close personal friendship.

(i)    Similarity of Backgrounds

Olis states that the court and Shelby share similar
backgrounds because they both graduated from Texas A&M University
and the University of Texas School of Law, served in the military,
participated in the Republican Party, and worked as partners at the
same law firm.  However, Olis does not state (1) that the court and
Shelby knew one another in school, in the military, in the
Republican Party, or at the Fulbright & Jaworski law firm, (2) that
they attended school, served in the military, participated in the
Republican Party, or worked at the Fulbright & Jaworski law firm at
the same time, or (3) that their paths even crossed while either of
them was engaged in any of those activities.  Nor does Olis attempt
to explain why these similarities in backgrounds could reasonably
support an inference that the court and Shelby shared a close

---

[7]Declaration of Jamie Olis in Support of Motion to Recuse
Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352, ¶ 7.

personal friendship.  Moreover, evidence of a common background shared by a judge and an attorney representing one of the parties to a suit does not suffice to establish a personal bias against a party sufficient to warrant recusal.  See Parrish, 524 F.2d at 101 (characterizing "allegation based on judge's background [that] states no specific facts that would suggest he would be anything but impartial in deciding the case before him . . . [as a] claim of bias [that] is general or impersonal at best"); Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers, 388 F.Supp. 155, 159 (E.D. Pa.), aff'd, 478 F.2d 1398 (3d Cir. 1974), cert. denied, 95 S.Ct. 2395 (1975) ("The facts pleaded will not suffice to show the personal bias required by the statute if they go to the background and associations of the judge rather than to his appraisal of a party personally.").

(ii)  Shelby as an AUSA

Stating that Shelby became an Assistant United States Attorney (AUSA) about the same time that the court became a federal judge, Olis surmises that the court and Shelby knew each other for almost 15 years.[8]  The fact that the court knew Shelby as someone who became an AUSA shortly after he became a district judge does not support an inference that the court and Shelby shared a close

---

[8]From these facts, Olis' attorney surmises that "Mr. Shelby must have appeared in your court on many occasions."  Confidential letter, Docket Entry No. 347, p. 2.  Before moving to Phoenix in 1997, Shelby served as lead prosecutor in two lengthy trials held before the court.

personal friendship.[9]  See <u>Andrade v. Chojnacki</u>, 338 F.3d 448, 456 (5th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1655 (2004) (rejecting argument that fact that an attorney made frequent appearances before a judge evinces characteristics that would even suggest, much less require, recusal).

### (iii)  Gift Given to Shelby

Olis states that when Shelby moved to Phoenix in 1997 the court gave Shelby a gift and told him that the court knew he would be back someday.  However, Olis neither describes the gift nor the circumstances under which it was given.  Since Olis fails to state facts showing that prior to giving Shelby the gift the court ever met Shelby socially as opposed to professionally in open court, and since the word "gift" covers a wide array of items including items that are given to professional acquaintances merely as souvenirs or symbolic gestures of good will, absent allegations showing that the gift was more than a souvenir or symbolic gesture of good will, Olis' statement that over ten years ago the court gave Shelby a going-away gift does not support an inference that the court and Shelby shared a close personal friendship.[10]  See <u>Parrish</u>, 524 F.2d at 100 (facts stated in affidavit supporting § 144 motion must be

---

[9]<u>See</u> <u>id.</u> (admitting that "those connections, taken alone, might not suggest a personal closeness").

[10]Before moving to Phoenix in 1997, Shelby served as lead prosecutor in two lengthy trials held before the court.  The court gave this souvenir to Shelby when he visited the court's chambers to say good-bye because he was moving to Phoenix.

stated with particularity; <u>Berger</u>, 41 S.Ct. at 233 (requiring affidavit to include statements of definite time, place, and character of circumstances supporting belief of bias).

> (iv)   Joint Attendance at Public Ceremonies

Olis states that when Shelby returned to Houston in 2002 the court administered his oath of office as United States Attorney for the Southern District of Texas at a public ceremony, and "that swearing-in appears to have been unnecessary, except as a public celebration, since Chief U.S. District Judge George Kazen had already administered the oath of office to Mr. Shelby in Laredo a month earlier, December 2001."[11]  Olis also states that after Shelby resigned in June of 2005,[12] "[i]t is reported that Judge Lake attended [the ceremony at which his successor was sworn into office where he] would have witnessed his close friend's deterioration."[13]  These statements regarding the public ceremony at which the court swore Shelby into office in 2002, and the public ceremony at which Shelby's successor was sworn into office, are the only facts Olis offers that the court and Shelby were ever together in each other's presence outside of a courtroom.[14]  These facts show only that the

_____

[11]Declaration of Jamie Olis in Support of Motion to Recuse Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352, ¶ 7.f.

[12]<u>Id.</u> at ¶ 7.h.

[13]<u>Id.</u> at ¶ 7.l.

[14]The court did spend a brief moment alone with Shelby in 1997 when he made a courtesy visit to the court's chambers to say good-bye before moving to Phoenix.  Since Shelby had conducted two lengthy trials before the court, the courtesy visit was not out of
(continued...)

court and Shelby were both present at the same two public ceremonies; they do not support an inference that the court and Shelby shared a close, personal friendship.

(v)   Conclusions as to Friendship

The facts stated in Olis' declaration from which Olis infers that the court and Shelby were such close friends that the court harbors a personal bias against Olis in favor of upholding his conviction fail the reasonable person test.  The facts stated in Olis' declaration do not describe or even suggest any extrajudicial or judicial relationship that would convince a reasonable person that the court and Shelby shared a close personal friendship, or that based on that friendship the court harbors a personal bias against Olis in favor of upholding his conviction, which he alleges was brought about by Shelby.  The facts stated in Olis' declaration show that the court and Shelby met shortly after the court became a judge and Shelby became an AUSA, and that the court's only contacts with Shelby have been (1) at court proceedings in which the court acted in his capacity as a judge and Shelby acted in his capacity as an AUSA, (2) at a brief impromptu meeting in 1997 when Shelby made a courtesy visit to the court's chambers to say good-bye before moving to Phoenix at which time the court gave Shelby a paperweight bearing the court seal as a souvenir of Houston, and (3) at two public ceremonies, the first at which the court swore

_____

[14](...continued)
the ordinary.  In fact, it is not uncommon for lawyers to visit judges when they are in the courthouse on business.

-16-

Shelby into office as the United States Attorney for the Southern District of Texas, and the second at which Shelby's successor was sworn into office.  These facts are not sufficient to convince a reasonable person that the court and Shelby shared any personal, familial, financial, or even social contact much less a close personal friendship.

Judges are not required to recuse under § 144 when facts stated in a supporting affidavit show that they have a casual, professional relationship with an attorney, victim, witness, or litigant appearing before them in court.  Recusal is required only when the stated facts establish a personal relationship of such magnitude that the judge cannot be impartial.  See Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144 29 (Fed. Jud. Ctr. 2002) ("A judge's friendship with one of the attorneys, or acquaintance with witnesses or even parties, does not ordinarily require recusal.  However, there are cases where the extent of intimacy, or other circumstances, renders recusal necessary.").  Whether considered individually or cumulatively, because the facts stated in Olis' declaration fail to show that apart from one brief encounter in the court's chambers over ten years ago, the court and Shelby ever met anywhere but in court or at public, ceremonial, court-related functions, Olis' subjective belief that the court and Shelby shared a close personal friendship of the magnitude that would convince a reasonable person that the court is biased against Olis in favor of upholding a conviction brought about by Shelby is

pure speculation. See <u>Chitimacha Tribe of Louisiana v. Harry L.</u>
<u>Laws Co., Inc.</u>, 690 F.2d 1157, 1167 (5th Cir. 1982), <u>cert. denied</u>,
104 S.Ct. 69 (1983) (holding that a reasonable person would not be
convinced that bias exists based upon pure speculation); <u>Parrish</u>,
524 F.2d at 102 ("friendship between the judge and counsel for
appellees, without more, is so lacking in merit as to warrant no
discussion"); <u>United States v. Gilboy</u>, 162 F.Supp. 384, 400
(M.D. Pa. 1958) ("[A judge] must have neighbors, friends and
acquaintances, business and social relations, and be a part of his
day and generation . . . the ordinary results of such associations
and the impressions they create in the mind of the judge are not
the 'personal bias or prejudice' to which the statute refers.").

### (2)   Court's Acts and Comments as Evidence of Bias

As evidence of acts and comments that would lead a reasonable
person to believe the court harbors an actual bias against him,
Olis cites the court's denial of his motion for leave to file an
<u>amicus curiae</u> brief, statements in a recently issued order, and
maintenance of a password protected filing system in a related
case.[15]   The government argues that these acts and comments are
insufficient to support recusal under § 144 because they are not
extrajudicial in origin but, instead, are based on the court's
judicial rulings.   See <u>Parrish</u>, 524 F.2d at 100 (a legally
sufficient affidavit must state facts that "if true they would

_____

[15]Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 &
455(a) and (b)(1), Docket Entry No. 352, pp. 27-28.

convince a reasonable man that a bias exists" and "the facts must show the bias is personal, as opposed to judicial, in nature"). See also United States v. Grinnell Corp., 86 S.Ct. 1698, 1710 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

(i)   Denial of Motion

Olis states in his declaration that "Judge Lake refused to permit the filing of an amicus brief by Robert Weisberg, a noted law professor at one of the nation's top law schools, Stanford Law School, on behalf of a group of interested law professors."[16]  An adverse judicial ruling is insufficient as a matter of law to establish that a court harbors a personal bias against a party absent a showing that the ruling was made on some basis other than what the court learned from his participation in the case.  See Berger, 41 S.Ct. at 232 ("the bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case"); Davis, 517 F.2d at 1051 (bias allegedly based on a previously issued order in the case at bar is not sufficient to require recusal under § 144).  Because Olis neither makes any

---

[16]Declaration of Jamie Olis in Support of Motion to Recuse Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352, ¶ 23. See also Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 & 455(a) and (b)(1), Docket Entry No. 352, p. 27.

-19-

showing that the court's denial of his motion to file an <u>amicus</u> brief was grounded on some basis other than what the court learned from his participation in this case nor offers any explanation for why denial of this motion constitutes evidence of personal bias against him, the court concludes that the denial of that motion is not sufficient to establish that the court harbors a personal bias against Olis that requires recusal under § 144.[17]  <u>See</u> <u>Gilboy</u>, 162 F.Supp. at 400 ("A defendant is easily persuaded of the prejudice of the judge.  Adverse rulings convince him of the fact.").

> (ii)  Statements Made in Previous Order

Olis states in his declaration that

> [e]ven before all of the briefs have been submitted, in a recent ancillary order, Judge Lake stated eleven times that he does not believe that I have a "high probability of success," which gives the appearance that he (Judge Lake) has a bias or prejudice against me in this proceeding.  (*See* Judge Lake's Order.)[18]

---

[17]In his motion Olis makes certain factual allegations that are not contained in his affidavit.  For example, Olis states that the court's denial of his motion to depose Jeffrey Heil, a former employee of the University of California who testified at his trial, indicates the court's bias against him.  See Docket Entry No. 352, p. 28.  This specific factual allegation is not contained in Olis' declaration and, as such, cannot support his motion for recusal under § 144.   Olis also argues in his motion that the court's denial of his request for an order directing Dynegy to produce the Heil deposition constitutes evidence of the court's bias against him, but offers no evidence showing that the court's denial of that request was made on an extrajudicial basis.  Nor has Olis offered any explanation for why the judicial act of denying these requests constitutes evidence that the court harbors a personal bias against him.

[18]Declaration of Jamie Olis in Support of Motion to Recuse
(continued...)

Olis argues that "Judge Lake's comments regarding the improbability of [his] success in the habeas proceeding even before briefing was completed . . . show an actual bias or prejudice" that requires recusal.[19]  In support of this argument Olis cites Norton v. State, 755 S.W.2d 522, 522-23 (Tex. App. -- Houston [1st Dist.] 1988, pet. ref'd, 771 S.W.2d 560 (Tex. Crim. App. 1989) (per curiam).  In Norton the defendant's attorney asked the trial judge, before trial, if he would accept a plea agreement for deferred adjudication.  Id. at 523.  The trial judge responded, "No, and if the jury gives her probation, I'll give her jail time."   Id. Appellant filed a motion to recuse the trial judge, which was denied following a hearing by another judge.  On appeal the court held that the trial judge's statement constituted evidence of bias sufficient to require recusal, and that the judge ruling on the motion to recuse abused her discretion by ruling otherwise.  Id. at 524.

The statements that Olis argues evidence the court's bias are contained in the March 3, 2008, Memorandum Opinion and Order (Docket Entry No. 344) in which the court denied not only Olis' motion to file an amicus brief (see § II.B.2(b)(2)(i), above), but also his Motion for Release on Bail (Docket Entry No. 307), and

---

[18](...continued)
Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352, ¶ 24.

   [19]Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 & 455(a) and (b)(1), Docket Entry No. 352, p. 28.

Motion for Discovery (Docket Entry No. 327).  The contested statements stem from the court's analysis of Olis' motion for release on bail.  There in a subsection titled "Standard of Review" the court states that

> [b]ail should be granted to a
>
>> prisoner pending habeas corpus review only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.
>
> Calley v. Callaway, 496 F.2d 701, 702 (5th Cir. 1974) (per curiam).  Olis bears the burden of persuasion on his motion for bail.  Id.[20]

In the subsections that followed the court set forth the legal standards pursuant to which each of Olis' claims would have to be analyzed, applied the facts alleged in Olis' motion to vacate to those standards, and for the reasons stated therein, concluded that Olis' lacks a high probability of success on any of the claims alleged in his motion to vacate.[21]  These statements are not

_____

[20]Memorandum Opinion and Order, Docket Entry No. 344, p. 5.

[21]The claims that the court analyzed individually in the March 3, 2008, Memorandum Opinion and Order are as follows: (1) whether Olis was denied the opportunity to present the defense of his choosing; (2) whether the indictment was constructively amended by statements made to the jury by the assistant United States attorneys who actually tried the case (i.e., as opposed to Shelby who merely supervised those attorneys outside of the courtroom); (3) whether the advice of counsel that Olis received at trial was constitutionally ineffective because his trial counsel failed to object to (a) statements that constructively amended the indictment, (b) the inclusion of an admittedly biased juror on the jury panel, and (c) legally erroneous jury instructions.  See Memorandum Opinion and Order,
(continued...)

sufficient to establish that the court has a personal bias against
Olis in favor of upholding his conviction because they are judicial
conclusions the court was required to make in ruling on his motion
for release on bail.  Since Olis fails to make any showing that the
reasons the court stated in support of its conclusions were
grounded on some basis other than what the court learned from
participating in this case, the statements that Olis argues
evidence the court's personal bias against him are readily
distinguishable from the statements at issue in Norton, 755 S.W.2d
at 522-23, where the trial judge responded to a pretrial question
with determinations he was not required to make.  Because Olis
fails to make any showing that this court based its conclusions
that the claims alleged in his motion to vacate lack a high
probability of success were grounded on some basis other than what
the court learned from his participation in this case, those
statements are not sufficient to establish that the court harbors
a personal bias and/or prejudice against Olis that requires recusal
under § 144.  See Berger, 41 S.Ct. at 232; Davis, 517 F.2d at 1051.

(iii)  Password Protected Filing System

Olis states in his declaration

> I have also recently learned that Judge Lake presided
> over my trial at the same time he presided over the
> class-action suit against Dynegy.  Pleadings indicate
> that he was aware of issues from the Dynegy class action
> suit that would greatly impact my conviction.  Yet Judge
> Lake permitted the civil suit to maintain a password-

---

²¹(...continued)
Docket Entry No. 344, pp. 6-10.

> accessible-only filing system that was completely hidden
> from me, giving the appearance that Judge Lake had taken
> sides and was predisposed to uphold my conviction that
> resulted from Mr. Shelby's effort.[22]

Olis argues that the court's "actual bias and prejudice is shown by

his decision to permit the class-action suit against Dynegy to

maintain a password-accessible-only filing system hidden from Olis,

when the issues in that case would have affected Olis'

prosecution."[23]   Olis provides no details about the password-

protected filing system of which he complains, such as whether it

was a filing system unique to the Dynegy class-action suit, or

whether it was merely the password protected electronic filing

system employed throughout the Southern District of Texas.   Olis

neither identifies the pleadings that he alleges indicate the court

was aware of issues from the class action suit that would have

impacted his conviction, nor alleges that those files were hidden

from or unavailable to his attorneys.   Moreover, even if the

password-protected filing system of which Olis complains was unique

to the Dynegy class action suit, such a filing system could only

have been established and maintained pursuant to a judicial ruling

that he neither identifies nor challenges as having been made on

some basis other than what the court learned from participation in

that case.   Accordingly, the court concludes that even if true,

---

[22]Declaration of Jamie Olis in Support of Motion to Recuse
Judge Sim Lake, Exhibit 6 attached to Docket Entry No. 352, ¶ 22.

[23]Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 &
455(a) and (b)(1), Docket Entry No. 352, p. 28.

maintenance of a password-protected filing system in a related case
is not sufficient to establish that the court harbors a personal
bias and/or prejudice against Olis that requires recusal under
§ 144.  See Parrish, 524 F.2d at 100 (requiring facts stated in
affidavit supporting § 144 motion to be stated with particularity;
Berger, 41 S.Ct. at 233 (same)).

(iv)  Conclusions as to Acts and Comments

The acts and comments of the court from which Olis infers that
the court harbors a personal bias against Olis in favor of
upholding his conviction fail both the reasonable person and the
extrajudicial source tests.  The facts stated in Olis' declaration
do not describe or even suggest the existence of any extrajudicial
bases for the court's denial of his motion for leave to file an
amicus curiae brief, the court's statements regarding the
improbability that the claims alleged in his motion to vacate would
be successful, or the court's maintenance of a password-protected
electronic filing system.  These acts and comments are not
sufficient to convince a reasonable person that the court will be
biased in favor of upholding Olis' conviction.  See Grinnell, 86
S.Ct. at 1710 ("The alleged bias to be disqualifying must stem from
an extrajudicial source and result in an opinion on the merits on
some basis other than what the judge learned from his participation
in the case.").

(c)  Conclusions as to Sufficiency of Olis' Declaration

Accepting as true the facts stated in the declaration Olis

-25-

submitted in support of his § 144 motion, the court concludes that Olis' declaration is not legally sufficient to warrant recusal under § 144 because the facts stated therein are not sufficient to convince a reasonable person that (1) the court had a close personal friendship with Shelby the level of which would cause the court to be biased against Olis or (2) that the court's acts and comments evidence bias against Olis that is personal, i.e., based on something other than the facts that the court learned by participating as the judge in this case.

## C.  Conclusions as to Olis' § 144 Motion

For the reasons explained above, the court concludes that recusal is not warranted under 28 U.S.C. § 144 because Olis' § 144 motion and supporting declaration were untimely filed, and because the declaration that Olis has submitted in support of his § 144 motion is not legally sufficient to establish that the court is actually biased against him in favor of upholding his conviction.

## III.  Olis' Motion Under 28 U.S.C. § 455

Olis argues that recusal is warranted under 28 U.S.C. § 455 because the claims asserted in his motion to vacate require the court judge the actions of his friend, Shelby, as well as his own actions regarding ex parte communications with a juror, and that these requirements might reasonably cause the court's impartiality to be questioned.  The government argues that Olis' § 455 motions should be denied because they are untimely and because no

reasonable and objective person, knowing all of the facts, would question the court's impartiality.  The court agrees.

## A.   Applicable Law

In pertinent part § 455 provides

(a)   Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b)   He shall also disqualify himself in the following circumstances:

(1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Section 455 is broader than § 144 in that it requires a judge to disqualify himself when "his impartiality might reasonably be questioned."   Id.   The Supreme Court has explained that the appearance of impartiality controls the § 455 analysis and not whether a judge subjectively believes himself to harbor bias or prejudice.  See Liljeberg v. Health Services Acquisition Corp., 108 S.Ct. 2194, 2202-03 (1988).  The Fifth Circuit has established three guidelines for courts to follow when applying § 455 that are substantially similar to the § 144 analysis.  Andrade v. Chonjacki, 338 F.3d at 454-55.  First, courts must use an objective standard for evaluating bias.   Id. (citing Vieux Carre Property Owners, Residents & Associations, Inc. v. Brown, 948 F.2d 1436, 1448 (5th Cir. 1991)).  Second, a court's "review should entail a careful

consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." <u>Id.</u> (citing <u>Sao Paulo State of Federative Rep. of Brazil v. American Tobacco Co.</u>, 122 S.Ct. 1290, 1292 (2002)). Third, courts must consider the origin of a judge's alleged bias, a consideration that is also known as the "extrajudicial source rule." <u>Id.</u> (citing <u>Liteky v. United States</u>, 114 S.Ct. 1147, 1153 (1994)). "As articulated by the Supreme Court, this rule more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." <u>Id.</u> The Fifth Circuit has additionally held that § 455 motions must be timely. <u>See United States v. Sanford</u>, 157 F.3d 987, 988 (5th Cir. 1998), <u>cert. denied</u>, 119 S.Ct. 1500 (1999) (describing the general rule on timeliness as requiring one to seek disqualification under § 455 "at the earliest moment after [obtaining] knowledge of the facts demonstrating the basis for such a disqualification").

Courts must be cautious and discriminating in reviewing recusal motions for, as the Seventh Circuit has noted:

> A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

<u>Matter of Mason</u>, 916 F.2d 384, 385-86 (7th Cir. 1990). <u>See also</u> H.R. Rep. No. 93-1453, 93rd Cong., 2nd Sess., 1974 U.S.C.C.A.N.

6351, 6355 ("Each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis."). Therefore, the court's inquiry is limited to outward manifestations and reasonable inferences drawn therefrom and must contemplate a well-informed, thoughtful, and objective observer, rather than the hypersensitive, cynical, and suspicious person. See United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995).

**B.   Analysis**

   1.   Timeliness

The timeliness requirement of § 455 obligates a party to raise the disqualification issue "at a reasonable time in the litigation." Hollywood Fantasy Corp. v. Gabor, 151 F.3d 203, 216 (5th Cir. 1998) (quoting United States v. York, 888 F.2d 1050, 1055 (5th Cir. 1989)). The Fifth Circuit has rejected recusal challenges on appeal as untimely when the challenger waited to see if he liked an outcome before asserting the recusal issue. See Sanford, 157 F.3d at 988-89 ("The most egregious delay — the closest thing to per se untimeliness — occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."). Because, like the facts included in the declaration that Olis submitted in support of

-29-

his § 144 motion, the factual allegations on which Olis bases his motions to recuse under §§ 455(a) and (b)(1) all stem from sources of public information that were available well before Olis filed his motion to vacate on October 5, 2007, and because Olis fails even to argue that his delay in filing his § 455 motions until after the court denied his motions for release on bail, discovery, and leave to file an amicus curiae brief was either necessary or reasonable, the court concludes that his § 455 motions are untimely. See United States v. Brinkworth, 68 F.3d 633, 640 (2d Cir. 1995) (defendant's "455(a) motion, conveniently filed soon after the district court refused to make a pre-plea commitment to sentencing, was untimely").

2.   Legal Sufficiency of Olis' Allegations Under § 455(a)

Olis argues that recusal is warranted under 28 U.S.C. § 455(a) because the court's close personal friendship with Shelby, and the court's ex parte communications with an allegedly biased juror would cause a reasonable and objective person, knowing all of the facts, to harbor doubts concerning the court's impartiality.

(a)   Standard of Review

To determine whether recusal is required under § 455(a), courts must decide "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." Patterson v. Mobil Oil Corp., 335 F.3d 476, 484 (5th Cir. 2003), cert. denied, 124 S.Ct. 1071 (2004). See also

-30-

Liljeberg, 108 S.Ct. at 2203 (explaining that § 455 requires judicial recusal "if a reasonable person, knowing all the circumstances would expect that the judge would have actual knowledge" of his interest or bias in the case).

      (b)   Application of the Law to the Facts

         **(1)   Friendship with Shelby**

    Asserting that the court and Shelby were close personal friends, Olis argues that "[t]he relationship between the Court and the late . . . Shelby presents a clear situation in which this Court's impartiality might well be objectively questioned."[24]

              (i)   Evidence of Friendship

    Each of Olis' motions to recuse speculatively concludes that the court and Shelby were close personal friends.   These speculative conclusions are based solely on allegations that (1) the court and Shelby had common backgrounds, (2) Shelby appeared as an AUSA before the court on an undocumented number of occasions, (3) over ten years ago in 1997 when Shelby moved to Phoenix the court gave him a going-away gift, (4) five years later in 2002 when Shelby returned to Houston the court swore Shelby into office as the United States Attorney for the Southern District of Texas at a public ceremony, and (5) three or four years thereafter in 2005 or 2006 the court saw Shelby ravaged by illness at the

---

[24]Motion to Recuse, Docket Entry No. 350, p. 3.

public ceremony at which his successor was sworn into office.

Olis argues that

> [t]he personal relationship between this Court and the
> late Shelby, and the unique facts alleged in this *habeas*
> proceeding against Shelby, present a situation in which
> this Court's impartiality might well be questioned.  It
> is unquestionable that a reasonable person might question
> this Court's impartiality in evaluating claims of gross
> prosecutorial misconduct committed by his friend in a
> case [over] which the Court itself presided."[25]

"To assist the court in determining how a reasonable person
would react to the circumstances of this case, Olis submits the
result of a focus group study recently conducted by CQS Research
Inc., an independent research company."[26]  Olis explains that

> [t]he focus group consisted of thirty-six disinterested
> reasonable persons with varying educational background,
> race, sex and ethnicity.  The focus group was provided a
> redacted copy of the recusal letter submitted by
> Mr. Lloyd E. Kelley to this Court and was asked to answer
> a simple questionnaire after reviewing the letter. . .
> The results from the questionnaire are startling. . . The
> respondents ***overwhelmingly*** favored recusal. Of those who
> answered the questionnaire, only three believed the Court
> could be impartial. . . Thirty-two believed that this
> Court could not be impartial and believed that another
> judge should take over the case.  Four respondents—not
> only harbor doubts about the Court's impartiality—they
> harbor no doubt that the Court was ***biased***.[27]

Olis devotes a significant amount of his briefing to detailed
review of judicial opinions in which appellate courts, including
the Fifth Circuit, have held that a court's personal relationship
with someone connected to a case warrants recusal under § 455(a).

---

[25]<u>Id.</u> at 10.

[26]Supplemental Motion to Recuse (Docket Entry No. 355), p. 2.

[27]<u>Id.</u>

The opinions that Olis has summarized in support of his motions for recusal under § 455(a) are:   Jordan, 49 F.3d at 152; In re Faulkner, 856 F.2d 716 (5th Cir. 1988) (per curiam); United States v. Murphy, 768 F.2d 1518 (7th Cir. 1985), cert. denied, 106 S.Ct. 1188 (1986); United States v. Kelly, 888 F.2d 732 (11th Cir. 1989); United States v. Tucker, 78 F.3d 1313 (8th Cir.), cert. denied, 117 S.Ct. 76 (1996); and Roberts v. Bailar, 625 F.2d 125 (6th Cir. 1980).   Although the Fifth Circuit has cautioned that

> section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue,

United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999), the analysis conducted in these cases show that when a recusal motion is based on allegations of friendship, the court must examine the nature and extent of the alleged friendship and consider "whether an astute observer . . . would conclude that the relation between judge and lawyer (a) is very much out of the ordinary course, and (b) presents a potential for actual impropriety if the worst implications are realized."   Murphy, 768 F.2d at 1537.

Whether considered individually or collectively, Olis' factual allegations would not cause a reasonable and objective person, knowing all of the facts, to harbor doubts concerning the court's impartiality in this case because they would not lead a reasonable and objective person to conclude either that the court and Shelby

-33-

shared a close personal relationship, or that the court's association with Shelby exceeded what might reasonably be expected for the associational activities of an ordinary district judge. See Parrish, 524 F.2d at 104.   See also Local Union 542, 388 F.Supp. at 159 (rejecting argument that background and associations of the judge will suffice to create appearance of personal bias); Andrade, 338 F.3d at 456 (rejecting argument that frequent appearances by an attorney in a judge's court evinces characteristics that would even suggest, much less require, recusal).  Opinions to the contrary expressed by members of the focus group referenced in Olis' Supplemental Motion to Recuse (Docket Entry No. 355) are unpersuasive because Olis makes no showing that their opinions reflect the "reasonable person" standard that the court must apply when considering § 455(a) motions to recuse, because the letter that the focus group members were given to read failed to apprize them of all the facts,[28] and because written comments accompanying many of the opinions demonstrate that many focus group members based their opinions on uncritical acceptance of Olis' attorney's unsubstantiated assertion that the court and Shelby "had an enormously close personal relationship that could almost be characterized as familial, or at

---

[28]Facts omitted from the letter include facts describing the legal standard the court had to apply when ruling on Olis' motion for release on bail, i.e., whether the claims asserted in his motion to vacate have a high probability of success.

least one of affection and 'mentorship.'"[29]  See United States v. Bray, 546 F.2d 851, 857 (10th Cir. 1976) (affirming failure to recuse even though the party who sought recusal had obtained 2000 signatures of persons desiring the removal of the judge). Moreover, Olis' factual allegations are qualitatively different from those at issue in the cases he has cited in support of his motion.

In Murphy, 768 F.2d at 1537, the Seventh Circuit observed that

[t]he existence of a 'reasonable question' varies from time to time as ordinary conduct of lawyers and judges changes. . . . The ordinary standards of conduct of the legal profession reflect judgments about the likelihood of actual impropriety in a particular case.  Unless the conduct is substantially out of the ordinary, it is unnecessary to pursue the further question whether the conduct presents the appearance of impropriety -- although it is always possible to inquire into actual impropriety no matter how common the conduct may be.

In today's legal culture friendships among judges and lawyers are common.  They are more than common; they are desirable.  A judge need not cut himself off from the rest of the legal community.  Social as well as official communications among judges and lawyers may improve the quality of legal decisions.  Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges.  Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases.  Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer.  E.g., In re United States, 666 F.2d 690 (1st Cir. 1981); Parrish v. Board of Commissioners, 524 F.2d 98 (5th Cir. 1975) (en banc). Cf. Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 680 (7th Cir.), cert. denied, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983).

---

[29]Docket Entry No. 347, p. 1.

> These cases also suggest, however, that when the association exceeds "what might reasonably be expected" in light of the associational activities of an ordinary judge (<u>Parrish, supra</u>, 524 F.2d at 104), the unusual aspects of a social relation may give rise to a reasonable question about the judge's impartiality.

In <u>Murphy</u> the Seventh Circuit concluded that the relationship between Judge Kocoras and United States Attorney Webb was unusual because they had made arrangements before the defendant's trial began to go off to a vacation hideaway together immediately after sentencing.  Olis has made no such allegations in this case.  Nor has Olis alleged that the court and Shelby were classmates like Judge Harmon and Michael Wood in <u>Jordan</u>, 49 F.3d at 155-58, or cousins like Judge Fish and Mrs. Pike in <u>Faulkner</u>, 856 F.2d at 716.  The other cases on which Olis relies are similarly inapposite.  <u>See</u> <u>Parrish</u>, 524 F.2d at 104 ("The allegation of lack of impartiality stemming from Judge Varner's acquaintanceship or friendship with witnesses and defense counsel is likewise tenuous.  It does not exceed what might be expected as background or associational activities with respect to the usual district judge.  As a factual basis, the allegations fall short of supporting an inference of lack of impartiality under § 455(a).").

### (ii)  Judicial Rulings and Statements

Olis argues that the court's denial of his motions to conduct discovery and to file an <u>amicus</u> brief, coupled with comments regarding the improbability of success on his motion to vacate

constitute additional evidence that recusal is warranted.[30]
"[J]udicial rulings alone almost never constitute a valid basis for
a bias or partiality motion."  Liteky, 114 S.Ct. at 1157 (citing
Grinnell, 86 S.Ct. at 1710).  Absent reliance of an extrajudicial
source, neither the court's denial of Olis' motions nor the court's
multiple statements that claims asserted in his motion to vacate
lack a high probability of success suffice to establish an
appearance of impartiality.  See In re International Business
Machines Corp., 618 F.2d 923, 929 (2d Cir. 1980) (trial judges must
be free to make rulings on the merits without apprehension that a
disproportionate number in favor of one litigant may create the
impression of bias).  When no extrajudicial source is involved,
judicial rulings may serve as the basis for disqualification only
"in the rarest of circumstances" where they "display a deep-seated
favoritism or antagonism that would make fair judgment impossible."
Id.  As an example of this extreme kind of bias, the Liteky Court
cited Berger, 41 S.Ct. at 230, a World War I espionage case against
German-American defendants, in which the judge commented:

> One must have a very judicial mind, indeed, not to be
> prejudiced against the German-Americans in this country.
> Their hearts are reeking with disloyalty.  This defendant
> is the kind of a man that spreads this kind of
> propaganda, and it has been spread until it has affected
> practically all Germans in this country.

Liteky, 114 S.Ct. at 1157 (quoting Berger, 41 S.Ct. at 231).

Olis does not point to evidence showing that any of the

---

[30]Motion to Recuse, Docket Entry No. 350, p. 18.

court's prior rulings in this case are based on an extrajudicial source or that they exhibit the degree of favoritism or antagonism required to warrant recusal under § 455(a).  See Liteky, 114 S.Ct. at 1157 ("Almost invariably, [judicial rulings] are proper grounds for appeal, not for recusal.").  Nor does Olis argue that this court has made any statements that reveal a deep-rooted favoritism or antagonism against him.  Instead, he argues that a neutral party might reasonably question the court's impartiality based on the court's statements that the claims asserted in his motion to vacate do not have a high probability of success.  However, when cited in their proper context, this court's statements do not evidence a deep-rooted favoritism or antagonism that would make fair judgment impossible.  For the reasons explained in § II.B.2(b)(2)(ii), above, these statements evidence only the court's application of the legal standard for ruling on Olis' motion for release on bail to the facts alleged in his motion to vacate, i.e., whether the claims asserted in his motion to vacate have a high probability of success.  Therefore, an objective third party aware of all the facts could not reasonably question the court's impartiality based on these statements.

### (2)  **Ex Parte** Communications with Juror

Olis argues that recusal is required under § 455(a) because the need for the court to decide whether its own conduct regarding ex parte communications with an allegedly biased juror was improper

creates an appearance of partiality.[31]  Olis argues that

> the Court is a key witness to Olis's claims of
> constitutional rights violation due to the inclusion of
> an admittedly biased juror and this Court's own *ex parte*
> communication with that juror.  The government admits the
> Court's *ex parte* communication occurred.  (Government's
> Answer and Motion for Summary Judgment at 60).  The fact
> that this Court will decide whether its own conduct was
> improper creates an appearance of partiality that should
> warrant recusal.[32]

The only claim in Olis' motion to vacate that is grounded on

the court's <u>ex parte</u> communications with a juror is the claim that

> [t]he fairness of the proceedings was . . . compromised
> by the inadequacy of defense counsel.  Counsel's
> inadequacies included: . . . (2) failure to object to the
> inclusion of an admittedly biased juror on Olis' panel;
> (3) permitting the Court to speak to the admittedly
> biased juror privately and out of the presence of both
> Olis and counsel, in violation of Olis' rights to be
> present and have counsel present at critical stages of
> the proceedings. . .[33]

In support of this argument Olis asserts that

---

[31]<u>Id.</u>

[32]<u>Id.</u>

[33]Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or
Correct Sentence by a Person in Federal Custody, Docket Entry No.
305, p. 5.  Although Olis describes the juror as "admittedly
biased," Olis does not argue, and the trial transcript does not
demonstrate, that the juror harbored any bias towards Olis in
particular or the defense in general.  Instead, the transcript
shows that on the second day of trial the juror wrote a note to the
court stating:

> I am sorry to inform you that I will not be able to judge
> this case fairly, knowing that my boss will not pay me
> for missed days and how my child will be getting home
> from school, because my income is the main source for my
> household.  So, it is unfair for all that I remain on the
> jury.  So, I'm asking you please to dismiss me from the
> case.

See Docket Entry No. 97, pp. 121-22.

[a]fter his conviction, Olis examined the transcripts of
the trial proceedings and noted several side-bar
discussions between the Court and counsel concerning a
juror's expression of bias. (*See* Tab 5—Trial Transcript
Day 1, 111:3-16; Day 2, 121:22-122:13, 223:19-225:7).
Neither Olis' counsel nor the Court informed Olis of the
juror's declaration of bias. Olis therefore was unaware
of the importance of the Court's *ex parte* conferences
with the juror. Olis did not intend to waive his rights
to be present and to have his counsel present during all
of the proceedings. Had he been asked, he would not have
waived his rights. (*See* Tab 6—Declaration of Jamie Olis
and the attached 14 Exhibits which are incorporated into
the Declaration and attached hereto)(hereinafter "Olis'
Declaration."). This fact in itself would warrant a
recusal under 28 U.S.C. Section 455(b)(1).[34]

To prevail on his claim for ineffective assistance of counsel,

Olis must make the following two showings: (1) that his trial

counsel's performance fell below an objective standard of

reasonableness and (2) that his counsel's unreasonable performance

deprived him of a fair trial with a reliable result. See

Strickland v. Washington, 104 S.Ct. 2052 (1984); United States v.

Fuchs, 467 F.3d 889, 910 (5th Cir. 2006), cert. denied, 127 S.Ct.

1502 (2007). Because Olis' ineffective assistance of counsel claim

does not require the court to rule on the propriety of its own

actions but, instead, on the propriety of Olis' counsel's actions,

no reasonable and objective person, knowing all of the facts, would

harbor doubts concerning the court's ability to be impartial when

ruling on this claim. See Petition of Geisser, 554 F.2d 698, 707

(5th Cir. 1977) (adopting reasoning of the Fourth Circuit in

---

[34]Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 &
455(a) and (b)(1), Docket Entry No. 352, p. 6.

<u>United States v. Smith</u>, 337 F.2d 49, 53 (4th Cir. 1964), <u>cert.</u> <u>denied</u>, 85 S.Ct. 1542 (1965), that "It would be anomalous, indeed, having determined that the purpose of section 2255 was to permit the trial judge, because of his familiarity with the proceedings and ability to supplement the record, to pass upon motions thereunder, now to ascribe to Congress the intention to disqualify any judge possessing that familiarity with the proceedings from passing upon the motion.  We are of the opinion that sections 2255 and 455 of Title 28 should be construed together.  So construed, it is apparent that the district judge here was not a material witness within the meaning of the latter section.").

(c)  Conclusions as to Appearance of Bias Under § 455(a)

For the reasons explained above, the court concludes that no reasonable and objective person aware of all the facts would question the court's impartiality because the facts cited by Olis in support of his § 455(a) motion would not cause such a person to conclude that the court and Shelby shared a close personal relationship, that the court's denial of Olis' motions evidence a desire of the court to protect Shelby's legacy by upholding Olis' conviction, or that Olis' ineffective assistance of counsel claim requires the court to rule on the propriety of the court's own actions instead of the propriety of Olis' counsel's actions.

3.  <u>Legal Sufficiency of Olis' Allegations Under § 455(b)(1)</u>

Olis argues that his allegation that the court acted improperly by conducting _ex parte_ communications with a juror during his trial warrants recusal under § 455(b)(1) because the court has personal knowledge of disputed evidentiary facts concerning the proceeding.

(a)   Applicable Law

Section 455(b)(1) provides for disqualification when the court possesses "personal knowledge of disputed evidentiary facts concerning the proceeding."   28 U.S.C. § 455(b)(1).

(b)   Application of the Law to the Facts

Although Olis does not identify the disputed evidentiary facts about which he alleges the court has personal knowledge, the law is clear that for the court's knowledge to warrant recusal under § 455(b)(1) that knowledge must derive from an extrajudicial source.   The mere act of participating in and presiding over judicial proceedings does not trigger the mechanisms of disqualification.   See United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir.), cert. denied, 113 S.Ct. 322 (1992) (district court "did not need to recuse itself under § 455(b)(1), because only personal knowledge of disputed evidentiary facts gained in an extrajudicial capacity is grounds for recusal, and any knowledge [the district judge] had concerning the government's [ex parte] sentencing submissions came directly from his participation in the case").   Since any knowledge the court has concerning the allegedly

-42-

biased juror came directly from his participation in this case, recusal is not warranted pursuant to § 455(b)(1) because the source of the court's knowledge is not extrajudicial.

>    (c)  Conclusions as to Appearance of Bias Under § 455(b)(1)

Because any knowledge the court has concerning the allegedly biased juror did not come from an extrajudicial source but, instead, from the court's participation in this case, the court concludes that recusal is not warranted under § 455(b)(1) based on the court's <u>ex parte</u> communications with a juror.

**C.   Conclusions as to Olis' § 455 Motions**

For the reasons explained above, the court concludes that recusal is not warranted under 28 U.S.C. § 455 because Olis' § 455 motions were untimely filed, and because the factual allegations on which they are based would not cause a reasonable and objective person knowing all the facts to question the court's impartiality.

## IV.   <u>Conclusions and Order</u>

For the reasons explained above, Olis' letter requesting recusal (Docket Entry No. 347) is **DENIED**, Olis' Motion to Recuse (Docket Entry No. 350) is **DENIED**, Olis' Motion to Recuse Judge Sim Lake Under 28 U.S.C. §§ 144 & 455(a) and (b)(1) (Docket Entry No. 352) is **DENIED**, and Olis' Supplemental Motion to Recuse (Docket

Entry No. 355) is **DENIED**.[35]

      **SIGNED** at Houston, Texas, on this the 31st day of July, 2008.

                                       SIM LAKE
                         UNITED STATES DISTRICT JUDGE

---

[35]The court has allowed the parties extraordinary leeway in submitting numerous briefs and other written materials in connection with the pending motions.  As the length of this Memorandum and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments.  While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments that have been or could have been raised.